## STATE vs. EDWARD BRISCOE.

*Criminal Law — Indictment — Larceny — Evidence—Character— Reputation—Possession of Property Recently Stolen— Property Found—Duty of Finder—Reasonable Doubt.*

1. The following questions propounded to a witness for the defendant, viz. : "Did you ever hear of this man's stealing ?" "Do you consider the defendant's character good or bad ?" held to be inadmissible.

2. Where recently stolen property is found in the possession of a person, that person is presumed in law to be the one who stole it, unless he accounts satisfactorily to the jury for his possession of the property.

3. Where lost property is found by a person it is the duty of the finder to make an effort to ascertain who is the owner, if the circumstances are of such a character that the owner might be known by the exercise of ordinary and reasonable care and diligence.

(*May 16, 1900.*)

JUDGES GRUBB, PENNEWILL and BOYCE, sitting.

*Robert C. White,* Attorney-General, for the State.

*Martin E. Smith* for the defendant.

Court of General Sessions, New Castle County, May Term, 1900.

INDICTMENT FOR LARCENY.

At the trial, it was proved that on the 27th of March, 1900, while the defendant and another man were moving the household goods of Mary LeCompt, in the City of Wilmington, the latter missed a lady's gold scarf pin, set with pearls, valued at five dollars. The pin was afterwards recovered and traced to the possession of Briscoe.

The defendant, being placed upon the stand, testified that he

found the pin in question on the sidewalk near his wagon, in front of Mary LeCompt's house on the day above referred to; that he did not know whose pin it was, and stuck it in his coat, making no effort to conceal it; that shortly after finding the pin he heard Mary LeCompt make a remark about somebody stealing something, but did not know that she referred to the pin. The defendant further testified that he traded off the pin to a man on Market street, in the City of Wilmington, Delaware, for another pin and thirty-five cents in money.

There was no proof that any effort was made to find the owner of the pin.

Herbert White was produced as a witness on behalf of the defendant, and, after stating that he had known Edward Briscoe, the defendant, for three or four years and that the latter had been in his employ, was asked by Mr. Smith the following questions:

"Did you ever hear of this man's stealing anything?"

Objected to by the Attorney-General, on the ground that good character can only be proved by reputation, not by specific acts. The objection was sustained.

The witness was then asked whether or not he considered the defendant's character to be good or bad.

Objected to by the Attorney-General on the same ground as above stated.

*Mr. Smith* contended that he was attempting to show the character of the defendant, and not his reputation; that character could only be proved by people who had had business dealings with a person and knew from those dealings what sort of a man he was.

*3 Rice on Evidence, 599 and 600, Secs. 371 and 373.*

PENNEWILL, J.:—We think, under the uniform rulings of this Court, that this testimony is inadmissible.

PENNEWILL, J., charging the jury:

Gentlemen of the jury:—Edward Briscoe, the prisoner at the bar, is charged in this indictment with having, in the month of March last, in this county and in this city, stolen one lady's gold scarf pin of the value of five dollars, of the goods and chattels of Mary LeCompt.

It is hardly necessary for us to say to you that larceny, the crime with which this defendant stands charged, is the felonious taking and carrying away of the personal property of another with intent to convert it to the use of the taker, without the consent of the owner.

In order that you may find the prisoner guilty as charged in the indictment, the State must prove, not only the taking of the property, but also that it was taken by the prisoner at the bar with the intent to convert it to his own use.

The law in cases of this kind, where property which has been stolen is found in the possession of another shortly after it was stolen, is as follows:

Where recently stolen property is found in the possession of a person, that person is presumed in law to be the one who stole it, unless he accounts satisfactorily to the jury for his possession of the property.

Therefore, if you believe that this property was stolen, that it was found in the possession of this prisoner shortly thereafter, and that he has failed to account satisfactorily for that possession, you may assume that he is the person who stole it.

As to the matter upon which we have been asked to charge by the Attorney-General, we will say that where lost property is found by a person, it is the duty of the finder to make an effort to ascertain who is the owner, if the circumstances are of such a character that the owner could be known by the exercise of ordinary and reasonable care and diligence. That principle of law has been very clearly stated by Greenleaf in his work on Evidence, page 139, Section 159, as follows:

"If the goods were found by the prisoner, the old rule was,

that his subsequent conversion of them to his own use was no evidence of a felonious intent in the taking. But this rule, in modern times, is received with some qualifications. For if the finder knows who is the owner of the lost chattel, or if, from any mark upon it, or from the circumstances under which it was found, the owner could reasonably have been ascertained, then the fraudulent conversion of it to the finder's use is sufficient evidence to justify the jury in finding the felonious intent, constituting a larceny. On this ground, hackney-coachmen and passenger-carriers have been found guilty of larceny, in appropriating to their own use the parcels and articles casually left in their vehicles by passengers; servants have been convicted for the like appropriation of money or valuables, found in or about their masters' houses; and so it has been held where a carpenter converted to his own use a sum of money found in a secret drawer of a bureau, delivered to him to be repaired. In a word, the omission to use the ordinary and well-known means of discovering the owner of goods lost and found raises a presumption of fraudulent intention, more or less strong, against the finder, which it behooves him to explain and obviate; and this is most readily and naturally done by evidence that he endeavored to discover the owner, and kept the goods safely in his custody until it was reasonably supposed that he could not be found; or that he openly made known the finding, so as to make himself responsible for the value to the owner when he should appear."

Therefore, gentlemen of the jury, if you are satisfied that the State has proven the essential facts which we have stated, and that the prisoner has not satisfactorily accounted for the possession of the property, it would be your duty to find a verdict of guilty. If, on the contrary, you are not satisfied from the evidence that the State has proved such facts, or if the prisoner has satisfactorily accounted for the possession of the property, it is your duty to find a verdict of not guilty.

If after considering all the evidence you entertain a reasonable

doubt of the guilt of the prisoner, that doubt inures to his benefit, and it would be your duty to render a verdict of not guilty.